Joseph v. Pitts. & W. V. Ry., Aplnt.

Argued September 27, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Albert B. Graver,* with him *John S. Wendt,* of *Wendt, Graver & Richardson,* for appellant.—A passenger in an auto, when approaching a place of danger such as a railroad crossing which is known or manifest to said passenger, is bound, along with the driver of the automobile, to use due care and to be vigilant and to observe, to avoid impending danger: Dunlap v. Traction Co., 248 Pa. 130; Martin v. R. R., 265 Pa. 282; Laudenberger v. Transit Co., 261 Pa. 288; Deane v. R. R., 129 Pa. 514; Hill v. Transit Co., 271 Pa. 232; Beemer v. R. R., 181 Iowa 642; Mensch v. R. R., 274 Pa. 356; Hepps v. R. R., 284 Pa. 479; Seiwell v. Hines, 273 Pa. 259.

*Charles G. Notari,* with him *Rody P. Marshall* and *Thomas M. Marshall,* for appellee.—Where a person about to go on a business errand is by chance invited by the owner and driver of an automobile, who is also going in that direction, to go along with him, such person is not engaged in a common purpose with the driver so as to impute the negligence of the driver to him.

Where a guest riding in the front seat of an automobile is about to traverse a railroad crossing and notices the driver stop, look and listen and he himself looks and listens and neither saw nor heard a train, and after starting again continues to exercise reasonable vigilance, he is not guilty of any negligence as a matter of law: Jerko v. Ry., 275 Pa. 459; Vocca v. R. R., 259 Pa. 42; Martin v. R. R., 265 Pa. 282; Minnich v. Traction Co., 267 Pa. 200; Mills v. R. R., 284 Pa. 605; Carlin v. P. R. T. Co., 290 Pa. 288.

OPINION BY MR. JUSTICE SADLER, November 26, 1928:

The plaintiff, Joseph, was injured at a grade crossing of defendant's railroad on July 29, 1924, and suffered injury for which compensation was asked in the proceeding now before us for review. A verdict was rendered in his favor, which the court below refused to set aside, and from the judgment entered this appeal was taken.

Briefly stated, the salient facts shown by the record are as follows: Sado, the owner of an automobile, intended to drive to the Town of Morgan on a business trip. The plaintiff wished to reach the same point to deliver an electric sweeper to a customer, and Sado offered to take him along. The car was driven on an improved highway to a cross-road leading to their destination. The latter passed over the single-track railroad of the defendant. Reaching the diverging driveway, about nine in the morning, on the day in question, the automobile was turned practically at right-angles to the south, and onto the dirt thoroughfare. Knowing of the track in front, the automobile was stopped, according to plaintiff's testimony, about ten feet from the first rail, and both driver and guest looked and listened, but neither heard nor saw a train approaching. It was then started forward, and though admittedly a view of the track to the west was unobstructed for from 525 to 600 feet, and the day was bright and clear, no engine or cars were observed. The grade to the crossing was steep, but the car,

traveling at five miles an hour, as was testified, would not have required more than two or three seconds to reach the first rail. The train, moving at forty miles an hour, could not have arrived at the point of collision, after coming within the line of vision, until practically eight or nine seconds had gone by.

Though beyond question within sight for the distance mentioned, the plaintiff, who was looking, as he stated, did not see the oncoming engine until it had reached a point from forty to sixty feet distant, or, as the driver said, 200 feet away. At that time the front wheels of the auto had just reached the first rail. Joseph then told Sado to "hurry up" for the train was coming, but the crossing was not cleared in time, and the accident happened. If the occupants of the car failed to observe the train, they were not looking, or had determined to run the risk of passing in front of it. The few feet from the place of stopping was on an eighteen per cent up-grade, and, with a car moving at not more than five miles an hour, it could have been brought to a standstill almost instantaneously, if cognizance had been taken of the apparent danger. Instead, the automobile went forward and had reached only the first rail, when both driver and passenger admit they observed the oncoming train.

The proof of negligence by defendant depended solely on the evidence offered to show that no whistle was blown until the plaintiff first saw the engine. Though disputed, the testimony submitted to establish this fact in question was sufficient to carry the case to the jury to decide the controversy raised, and, if it were the only matter involved, the finding of a failure to give a proper signal and the verdict rendered could be sustained, but, under all of the facts presented, the apparent contributory negligence of the plaintiff made binding instructions for the defendant imperative. In our consideration of the case all of the competent testimony offered by the plaintiff must be regarded as disclosing the true

version of the occurrence. The claimant is likewise entitled to the benefit of all proper inferences which may be drawn therefrom in his favor (Grimes v. P. R. R. Co., 289 Pa. 320), and, in discussing the relative rights of the parties, the record has been examined with this principle in view.

Appellant first raises the question as to whether Joseph must be considered as a guest of the driver Sado. It will be remembered that the latter had invited the former to accompany him on the journey, and there was no evidence that Sado was the agent of plaintiff to take him to the designated point, as in Hepps v. P. & L. E. R. R. Co., 284 Pa. 479, referred to by appellant, nor was there testimony to prove the parties were engaged upon a common purpose, so as to make the so-called "guest" rule inapplicable. To charge with contributory negligence on the ground that the party injured was engaged in a joint undertaking, something more must be shown than that the parties were riding together. It must further appear that the passenger had some voice in the control of the vehicle, so as to make it subject to common command, as well as possession. In itself, the mere acceptance of an invitation to ride for pleasure (or as an accommodation) does not ordinarily constitute a joint enterprise, because there is no equal right in governing the conduct of the undertaking: Alperdt v. Paige, 292 Pa. 1, 6.

Treated as a guest, the rule is well established that the plaintiff was not bound to the same degree of diligence as the driver of the car, and the negligence of the latter is not to be imputed to him: Nutt v. P. R. R. Co., 281 Pa. 372; Jerko v. B., R. & P. Ry. Co., 275 Pa. 459. He may assume that the operator will perform his duty (Loughrey v. P. R. R. Co., 284 Pa. 267; Davis v. American Ice Co., 285 Pa. 177), and is not bound to keep the same watchful attention of the roadway in front. So, he will not be held chargeable with negligence in approaching a crossing of which he knew nothing (Eline

v. W. M. Ry. Co., 262 Pa. 33), or for inaction, or failure to make observations, when there was no reason to expect, from the attending circumstances, the imminence of any danger (Kilpatrick v. P. R. T. Co., 290 Pa. 288; Mills v. P. R. R. Co., 284 Pa. 605), but he is nevertheless not relieved from taking due precautions for his own protection from negligent acts which he observes, or should have seen, had he been duly diligent: Alperdt v. Paige, supra, p. 7. "In the general run of things, a guest's attention is not fixed on the roadway or the driving. He is usually engaged in conversation with those about him, or in observing the country, or passing objects. But even under these circumstances, there arise in the course of the drive, conditions which clearly fix on the guest the duty to give warning": Kilpatrick v. P. R. T. Co., supra, 295.

In some cases it has been said that the passenger is chargeable with the negligence of the driver when he joins in "testing a danger." "Where two persons are engaged in a joint enterprise for their mutual benefit or pleasure, and are in equal control or ownership of the means of transportation, it may be said they join in testing danger incident to the operation of the machine. ......But an invited guest, and especially one who occupies a rear seat in the car where no opportunity of control exists, is in a different position. He ordinarily is not concerned with the operating of the car and cannot be viewed as joining with the driver in its operation merely from the fact that he happens to be an occupant of the machine. He is, of course, not without responsibility in the matter and must be held accountable if he assumes the risk of a danger which he knows exists or remains silent in the face of a known danger and fails to warn the driver of its existence. When dangers, which are either reasonably manifest or known to an invited guest, confront the driver of a vehicle, and the guest has an adequate and proper opportunity to control or influence the situation for safety, if he sits by without

warning or protest and permits himself to be driven carelessly to his injury, this is negligence which will bar recovery: Minnich v. Easton Transit Co., 267 Pa. 200": Natt v. P. R. R. Co., supra, p. 377.

Or, as was said by Mr. Justice KEPHART in Kilpatrick v. P. R. T. Co., supra, p. 296: "It would seem that the rule to be deduced from the authorities is that the guest will be held responsible for his action or failure to act in the face of a danger of which he knew, or where it can reasonably be inferred that he must have realized the peril." Joseph, in the present case, not only had opportunity to observe the oncoming train, but testified that he was looking out for it as the car approached the crossing. Though he must have seen it when more than 500 feet away, if his story is true, he did not do so until it was but 40 to 60 feet distant, and then expressly undertook to give the driver instructions to "hurry up." This brings his conduct within the line of that condemned in Hill v. P. R. T. Co., 271 Pa. 232, and Morningstar v. N. E. Penna. R. R., 290 Pa. 14.

When the automobile approached the crossing it was the duty of the driver to stop, look and listen at the usual place, and to continue to look until the track was traversed, for the railroad train had the right of way: Grimes v. P. R. R. Co., supra. Though obliged to look not only to the west but also to the east, and "he could not make both observations at one time, [yet] the head can be turned in the fraction of a second, and......it is true beyond a doubt that the merest glance, with attention, to the [west] would have shown [plaintiff] the approach of the train which subsequently struck [the] motor, almost immediately upon the entrance on the ......track": Provost v. Director General, 265 Pa. 589, 591; Mensch v. Director General, 274 Pa. 356, 358.

Clearly, both Joseph and Sado could have seen the danger had they been observant, as are ordinarily careful persons under like circumstances. If first viewed when the train rounded the curve, mathematical calcu-

lation, though not controlling, will clearly demonstrate that there was time to cross, driving at the rate of five miles an hour, or to stop on the up-grade and permit the train to pass. It will not do for plaintiff to say that he did not see the engine until within from 40 to 60 feet, when the physical facts show this to be untrue, if attentive, as he claims. What was said by Mr. Justice FRAZER in a recent case (Haskins v. P. R. R. Co., 293 Pa. 537) applies here: "There are allowable here but two logical conclusions: Either Haskins stopped and looked, heard and saw the engine approaching, and took his chance of clearing the crossing ahead of it; or else, having, at a point distant from the crossing, observed or heard the engine coming, he took an equally fatal chance, and failed to stop, but drove upon the crossing at the very instant the locomotive arrived at that point." In Myers v. B. & O. R. R. Co., 150 Pa. 386, we said, page 390: "The fact that four or five seconds after he says he looked and listened, he was struck by a train that must have been plainly visible and almost upon him at the time he alleges he looked, is so palpably and absolutely irreconcilable with the truth of his statement that he did stop, look both ways and listen before driving upon the crossing, that it is trifling with justice to permit a jury to find that it is true." Recovery, under similar circumstances, has been denied in many cases, of which Hill v. P. R. T.' Co., supra; Alperdt v. Paige, supra; Hepps v. B. & L. E. R. R. Co., supra; Grimes v. P. R. R. Co., supra; Tull v. B. & O. R. R. Co., 292 Pa. 458, are illustrations.

Sado must have seen the train when 500 feet away, if looking, yet he proceeded and entered upon the first rail, when it was only from 40 to 60 feet distant. Joseph, the guest and present plaintiff, though not bound to keep a continuous lookout on the highway after the driver had stopped, looked and listened, yet was under the duty to make use of his ordinary faculties, and take cognizance of a danger which must have

been apparent, and to prevent the accident if possible. Instead, he joined in the risk of making the crossing in advance of the train, legally possessed of the right of way, and urged the driver to "hurry up" and pass in front. The undisputed facts lead inevitably to the conclusion that he failed to exercise the care to be expected of an ordinarily prudent person under like circumstances, and therefore cannot recover. As his contributory negligence was plainly disclosed, binding instructions should have been given for defendant: B. & O. R. R. Co. v. Goodman (U. S.), 72 L. ed. 22.

The assignments of error are sustained, the judgment is reversed and here entered for the defendant.